# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

No. 22-1089

ALMARIS SERRANO-COLON,

Plaintiffs-Appellant,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, RICHARD
MALDONADO; ALEJANDRO MAYORKAS, in his official capacity as
Secretary of the Department of Homeland Security,

Defendants – Appellees,

On Appeal from the United States District Court
for the District of Puerto Rico
No. 16-1268

## APPELLANT'S REPLY BRIEF

*Edgardo J. Hernández Ohárriz*
*(CA1# 1193435)*
**HERNANDEZ-OHARRIZ& SANTIAGO, P.S.C.**
Centro Internacional de Mercadeo 1
100 Carr. 165, Suite 612
Guaynabo, PR 00908
Tel: (787) 378-5630
Fax: (787) 775-1672
ehernandez@lawservicespr.com

## TABLE OF CONTENTS

**Page**

| | |
|---|---|
| **TABLE OF AUTHORITIES** | **3-4** |
| **INTRODUCTION** | **5-6** |
| **ARGUMENT** | **7-20** |
| **CONCLUSION** | **20** |
| **CERTIFICATE OF COMPLIANCE** | **22** |
| **ADDENDUM** | **23** |

## TABLE OF AUTHORITIES

**I.   CASE LAW:**                                                                    **Page**

Oncale v. Sundowner Offshore Services, Inc.,  523 U.S. 75, 81–            **8**
82 (1998)


Laing v. Fed. Exp. Corp., 703 F.3d 713, 720 (4th Cir. 2013)              **8, 12**


Everett v. Grady Mem'l Hosp. Corp., 703 F. App'x 938, 948 (11th          **12**
Cir. 2017)

Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th           **12**
Cir.2003)

Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 33 (1st         **13**
Cir. 2011)

Ríos-Jiménez v. Sec'y of Veterans Affs., 520 F.3d 31, 42 (1st Cir.       **13**
2008)

Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)            **13, 14**

Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 22 (1st Cir. 2004)     **14-15**

Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360, 2366, 168               **19**
L.Ed.2d 96 (2007)

Sueiro Vazquez v. Torregrosa de la Rosa, 494 F.3d 227, 233 (1st          **19, 20**
Cir. 2007)

Peake v. First Nat. Bank and Trust Co. of Marquette, 717 F.2d 1016
(6th Cir. 1983).                                                          **19**

Chaney v. Mobley, 791 F.2d 931 (6th Cir. 1986)                           **19**

Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir.1998)                       **19-20**

El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999)          **20**

Morley Constr. Co. v. Md. Cas. Co., 300 U.S. 185, 191 (1937)            **20**

Smith v. Barry, 112 S.Ct. 678, 682 (1992)                               **20**

Kotler v. American Tobacco Co., 981 F.2d 7, 10-11 (1st Cir.1992)        **20**

Biggins v. Hazen Paper Co., No. 91-1591, 1994 WL 398013, at *1          **20**
(1st Cir. June 27, 1994)

## II.  RULES:

Rule 4(a)(1)                                                    **19**
Fed.R.App.P.26(b)                                              **19**
Fed.R.App.P.3(c)                                               **20**

## III. OTHER AUTHORITIES:

Collective Bargaining Agreement between The American
Federation of Government Employees, AFL-CIO and The
Transportation Security Administration                         **17**
TSA MD 11000.63-1 Handbook, Absence and Leave                  **17**

## I.    INTRUDUCTION

The Record in this case provides sufficient evidence to permit this Panel to conclude Ms. Serrano was suffering from fibromyalgia and experiencing a high-risk pregnancy at the relevant time period when she was terminated. Yes, the absences are material in nature, but only in the context to help a jury find that the root <u>cause</u> of the absences was due to a retaliation scheme to generate the required pretext to remove Ms. Serrano "legally" in appearance, because, simply stated, DHS did not want to deal anymore with an employee with fibromyalgia experiencing a high-risk pregnancy**.** It's a cause-and-effect matter. DHS orchestrated the alleged pattern of absenteeism in 2015 by refusing reasonable accommodations requests to produce the effect: the termination.

Defendants can't ignore the elephant in the room: DHS dismissed illegally a high-risk pregnant woman from her job using as pretext the absences. DHS fostered the pretext necessary to remove Ms. Serrano, ultimately, because they did not want to deal anymore with an employee suffering from a high-risk pregnancy and fibromyalgia**.** Those are the facts.

Defendants Brief tried to hide what is evident. They expected to divert the attention of this Panel from considering the obvious: the absences were *never* the real reason behind Ms. Serrano's dismissal.  The pretext is straightforward: DHS needed the absences to promote, in appearance, a legitimate reason to dismiss a

woman experiencing a high-risk pregnancy in her 3rd trimester simultaneously suffering from fibromyalgia.

In other words, defendants tried to cover-up the elephant in the room, suggesting, without any basis whatsoever on the record, that Plaintiffs did not provide comparators in accordance with the applicable law, or, that, by such means was the only way possible to prove discrimination.  Also, by suggesting that Ms. Serrano could *only* excuse herself at least 60-minutes before, or by making unfounded personal attacks to her character, implying, falsely, that she directly or indirectly participated, induced or was part of a scheme to forge her own attendance records. Likewise, DHS self-servingly diminished the effect and importance of performance evaluations for job tenancy in the workforce.  And, finally, but not least, bringing a subject out of left field that this Court lacks jurisdiction to attend.

Notwithstanding the foregoing, the present Reply will once again place the facts in the necessary context.  Plaintiffs will be concise.  It is not the intention of Plaintiffs to keep bulking the record unnecessary.

## II.    ARGUMENT

a) <u>About the Comparators</u>

Defendants posit the fourth prong is not whether there were others within her protected class that were treated more favorably than Serrano; but whether there were other similarly situated individuals *outside* her protected class that were treated more favorably. (**DB 41**).   And, considering this alone, they further suggest Ms. Serrano's sex discrimination claim fails at the outset "because she has put forward no evidence to satisfy the fourth prong. (***Id.* 41**).

The problem with Defendants position is that it falters in two fronts. First, Plaintiffs *did* proffer a valid comparator, and secondly, in the alternative, no comparator is actually needed to survive summary judgment under the McDonnell Douglas standard if other evidence, circumstantial or not, proves as a whole DHS's discriminatory intent[1].  We explain.

The record shows that Plaintiffs put forward a valid comparator: Orlando Gonzalez and Sara Rosado.  Such comparators were at all times mentioned similarly situated individuals outside Ms. Serrano's protected class (pregnant) that were

---

[1] Consider, for example, the complexity of the evidence approved by the Supreme Court in *Oncale v. Sundowner Offshore Services, Inc.,* which held that in the context of sex discrimination claims based on sexual harassment (where comparator evidence is not paramount), a decision should be based on "all the circumstances," including the "constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (internal quotation marks omitted). <u>Laing v. Fed. Exp. Corp.</u>, 703 F.3d 713, 720 (4th Cir. 2013)

treated more favorable. The mentioned comparators were a male and female, respectively, without any known disabilities, which held the same positions as Ms. Serrano: TSA screener. (**<u>See</u> App. 192-199**)

From Orlando's own declaration under penalty of perjury, he stated the following in its relevant portions, to wit:

1) He worked as a TSO responsible for screening passengers and their baggage working with Ms. Serrano [*in the same position*] since 2008 until her termination on 2015. (**<u>See</u> App. 192, ¶1, 3**)

2) Other TSOs, *including him*, were also absent and late to work on various occasions; despite numerous absences to take care of a family member, his reasons for absences were *never* questioned. (**<u>See</u> App. 194, ¶11**) (our emphasis)

3) He was *never* asked to bring in medical documentation to support or verify his absences. (***Id.* ¶11**) (our emphasis)

4) In August 2014, he was placed on leave restriction, enduring absences due to personal issues, but during that timeframe he was never asked to substantiate absences with medical documentation. (***Id.* ¶14**) (our emphasis)

5) [defendant's] treated Ms. Serrano *differently*: requiring she hand in medical documentation for time she was not at work; submitting additional

administrative acceptable documentation other than a SF-71 for single absences; allowing other employees to call out within the 60 minutes prior to the start of their shift *or* after their shift had started. (***Id.* ¶12**) (our emphasis)

From Sara's own declaration under penalty of perjury, she stated the following in its relevant portions, to wit:

1) Ms. Serrano was at times late or absent from work. These absences were, for the majority of the times, due to her disability. In 2015, many of her absences had to do with the complications fibromyalgia was causing for her pregnancy. (<u>**See**</u> **App. 197, ¶6**)

2) Ms. Serrano's absences never caused a burden on TSA operations or caused unnecessary delays or longer waits for travelers and others. I did not notice these absences having any negative or adverse effect on TSA's screening operations and co-worker morale. (***Id.* ¶7**)

3) During the periods Mrs. Serrano requested reasonable accommodations, Management hired more females and allow them to transfer, while denying all her petitions. (***Id.* ¶10**)

4) Other TSOs were also absent to work on various occasions, including myself. I was never asked to bring in medical documentation to support or

verify single absences: a verbal explanation was sufficient. **(See App. 198, ¶13)**

5) I want to add that during the time I was absent for work Management never requested me to bring an excused for one day. I brought an excuse for more than two consecutive days when I was absent not for just one day, I explained to the STSO Diaz what happened to me and that was enough. On the other hand, Mrs. Serrano was required to bring an excused for every single day she was absent. I know that one coworker was absent during weeks and I did not see Management making comments about how he was causing problems with his absences but when Mrs. Serrano was absent, they made comments. **(See App. 197-198, ¶17)**

The foregoing statements came from Orlando and Sara, which they voluntarily submitted under penalty of perjury. This alone, for purposes of the applicable standard of review, should suffice to create a triable issue of fact sufficient to survive summary judgment.

Moreover, even if this Panel disregards Orlando Gonzalez as a valid comparator, the fact of the matter is that no actual comparator is required like a "do or die" event. For example, a Plaintiff is not required to show a comparator employee to proceed under the McDonnell Douglas if she presents other evidence that meets

the fourth factor. <u>Everett v. Grady Mem'l Hosp. Corp.</u>, 703 F. App'x 938, 948 (11th Cir. 2017)

    As the caselaw illustrated, comparator evidence is not "the final answer in discrimination law."<u>Laing v. Fed. Exp. Corp.</u>, 703 F.3d 713, 720 (4th Cir. 2013). The Court continued to say: "notwithstanding the virtues of comparator evidence, a plaintiff is not required as a matter of law to point to a similarly situated comparator in order to succeed on a discrimination claim." *Id.* citing, *Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir.2003).*

    The Court reasoned in *Laing*, moreover, that "in cases where an employer adduces a nondiscriminatory reason for discharging the plaintiff and comparator evidence does not exist to rebut that explanation, the plaintiff must be able to point persuasively to some other form of evidence demonstrating that the employer's explanation was a mere pretext for discrimination. *Id*. Finally Circuit courts have reasoned that the plaintiff's failure to produce a comparator does not necessarily doom the plantiff's case… instead, a plaintiff can present circumstantial evidence of an employer's discriminatory intent. <u>Everett</u>, *supra*, at 948.

    Simply stated, the Record before the Court is vast with more than enough evidence to suggest the discriminatory animus behind Ms. Serrano's dismissal.

b) <u>About the Performance Evaluations</u>

On this topic, defendants dismiss the issue implying that Ms. Serrano's attendance issues is of little moment, suggesting that the evaluations focused on assessing how Serrano executed her job functions when she was actually in the workplace. (**DB 45**). But they fail to explain *why* is of "little moment" and *why* they merely focused on her job execution <u>excluding</u> the element of attendance, which is of great relevance on this issue.  On this same line, Defendants seem to forget that "attendance is an essential function of any job." *Colón-Fontánez v. Mun. of San Juan*, 660 F.3d 17, 33 (1st Cir. 2011) (quoting *Ríos-Jiménez v. Sec'y of Veterans Affs*., 520 F.3d 31, 42 (1st Cir. 2008)). Absenteeism, therefore, may "**undermine any finding that [she] was performing [her] job adequately**." *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 n.2 (1st Cir. 2003) (Our emphasis).

Considering the caselaw, its paramount to ask: how Ms. Serrano was performing her job adequately if she was at the same time having grave attendance issues? It's a contradiction.  If Ms. Serrano was performing well the essential functions of her work –as defendants rightfully noted through the Evaluations and Mid-year evaluations—[2] it necessarily means, that her attendance did not have any negative consequence to her outstanding performance. Hence, the absences in 2015 had no effect in the wellbeing of the employer. It cannot go both ways.  Again, absenteeism may "undermine any finding that Ms. Serrano was performing her job

---

[2] <u>See</u> Performance Evaluations (**App. 351, 365, 381**) and Mid-Year evaluations (**App. 401, 404-405, 408**)

adequately. *Benoit*, *supra*.    Therefore, since she excelled in the performance evaluations, defendants cannot seriously suggest Ms. Serrano's attendance had any bearing in her termination.

Simply put, this is a red flag for defendant's case theory. Plaintiffs factually identified on the Record all the occasions Defendants could have addressed the attendance issues, but did not do it.  That suggests, factually, that her attendance was no hindrance whatsoever for the fulfillment of Ms. Serrano's essential functions which she excelled. It further suggests the discriminatory intent behind her dismissal: basing her dismissal for attendance issues, when that was never an issue.

Moreover, the ruling on *Calero-Cerezo* is comparable.  In that case, in its relevant part, the Plaintiff received above average to excellent performance reviews. There, the Court reasoned: "Based on this, a factfinder might easily find that she possessed the requisite skill and experience for the position of Assistant District Counsel … A much closer question is whether a reasonable factfinder could conclude that Calero, while suffering the powerful effects of her disability, still possessed the ability to function competently and productively in the workplace, either without any modification of her work situation or with a reasonable accommodation." Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 22 (1st Cir. 2004)

"This court need not explore the nuances of this interesting conundrum, since the record in this case is adequate to generate an issue for consideration by a factfinder regarding plaintiff's capacity to perform her job, even while suffering her major depression, at least with an appropriate accommodation. The defendants' own evaluation, issued less than a year before plaintiff ceased working for the INS and several months *after* Calero's attack of depression, gave Calero a job rating, not merely of average, but of "fully successful. *Id*. at 23.

In other words, despite some flaws and problems, the INS pronounced itself fully satisfied with Calero's level of performance even while she suffered from her major depression. *Id.*

Here, likewise, defendant's own evaluation, issued less than a year before plaintiff ceased working for DHS and several months *after* Ms. Serrano's absenteeism spiked in 2015 due to the denial of reasonable accommodations due to the high-risk pregnancy entering the third trimester which exacerbated her fibromyalgia condition, gave Ms. Serrano a job rating, not merely of average, but of effectiveness.  DHS pronounced itself fully satisfied with Ms. Serrano's level of performance even while she suffered from fibromyalgia and a high-risk pregnancy.

On the same token, This Panel need not explore the nuances of this interesting conundrum, since the record in this case is adequate to generate an issue for

consideration by a factfinder regarding plaintiff's capacity to perform her job, even while suffering from fibromyalgia and pregnancy, **at least with an appropriate accommodation**.

c) About the absences

Here, defendants claim that Ms. Serrano has never explained why she was incapable of timely excusing herself at least 60 minutes before her shifts. The problem with this statement is that she didn't have to. In other words, she always performed in compliance with the applicable rulebook at the relevant time. And, in that respect, the rulebook specifically mentioned at all times that an employee could excuse at least 60 minutes *or* **as soon as possible**.

In fact, the three letters of Leave Restriction given to Ms. Serrano, mentioned, specifically, the right to present an excuse "as soon as possible": "*Requests due to sudden illness must be made directly to me or to (TSM) Richard Maldonado at least one (1) hour before the beginning of your scheduled time to report to work, __or__ as soon as possible, and must explain the need for unscheduled leave. You must request leave on each day of absence*." (__See__ **App. 57, 63, 69 - Leave Requests for Sudden Illness**) (our emphasis)

The operative word here, of course, is "or". That is reflected in the Record from DHS's own redacted letters of Leave Restriction and Orlando Fernandez's

declaration stating that "employees could call out *within* the 60 minute prior to the start of their shift **or** after their shift had started. (our emphasis)

Moreover, Plaintiffs requests this Panel to take judicial notice of the Collective Bargaining Agreement, concerning the Leave Procedures:

> Employees should notify management at least 60 minutes prior to the start of the employee's scheduled shift to request unanticipated leave. **In the event the employee is presented with circumstances that would reasonably preclude him/her from contacting management**, **notification** should be made **as soon as possible**. Upon return to duty, the employee will submit a completed OPM 71 and documentation that might be required to substantiate the absence. **(**our emphasis**)**

On the same token, see TSA's MD 1100.63-1 Handbook regarding the Leave Procedures:

> Employees requesting unscheduled leave are required to follow local notification procedures. Generally, employees must notify management 60 minutes prior to the start of the employee's scheduled shift. **In the event the employee is presented with circumstances that would reasonably preclude him/her from contacting management,** **notification** should be made **as soon as possible**. (our emphasis)

From the record and additional rulebooks, it's evident that Ms. Serrano wasn't strictly bound to excuse herself at least 60 minutes before. The CBA, TSA Handbook and the actual Letters of Leave Restriction redacted by defendant's themselves provided that any notification could be made "as soon as possible".

16

Finally, even when considering the foregoing Plaintiff's stresses the fact that such issue is totally irrelevant, given the fact that, defendants admit scoring Ms. Serrano well on her performance evaluations. Meaning that if such absences would have been a real issue, they would have been reflected accordingly on such evaluations.

d) About the alleged attendance records being forged

Concerning this subject, the title applied by defendants is misleading, as it suggests mistakenly that Ms. Serrano had any sort of participation on it. For this, Orlando's declaration is sufficient: "In 2013, Ms. Serrano unfairly received a 15-day suspension for submitting inaccurate time and attendance reports, being late for work, and failure to follow instructions. **This suspension was unfair because Ms. Serrano did not submit inaccurate time and attendance reports**. The reports were changed by the time-keeper **without her knowledge**. The time-keeper at that time did that to many employees but only Ms. Serrano was investigated. **(See App. 198, ¶13**) (our emphasis)

e) About the Rehabilitation Act Claim

This last subject is not of concern herein. The court doesn't have jurisdiction to attend this matter because this was never part of the Appeal made by Plaintiffs. If

17

defendant-appellees wanted to bring this issue before this Court, they had to bring a cross appeal by first filing the required notice of appeal accordingly. The filing of a notice of appeal is a jurisdictional requirement. *See Bowles v. Russell,* 551 U.S. 205, 127 S.Ct. 2360, 2366, 168 L.Ed.2d 96 (2007); Sueiro Vazquez v. Torregrosa de la Rosa, 494 F.3d 227, 233 (1st Cir. 2007).

The failure of an appellant to timely file a notice of appeal deprives an appellate court of jurisdiction. Compliance with Rule 4(a), Federal Rules of Appellate Procedure, is a mandatory and jurisdictional prerequisite which this Court can neither waive nor extend. Peake v. First Nat. Bank and Trust Co. of Marquette, 717 F.2d 1016 (6th Cir. 1983). Rule 26(b), Federal Rules of Appellate Procedure, specifically provides that this Court cannot enlarge the time for filing a notice of appeal. Chaney v. Mobley, 791 F.2d 931 (6th Cir. 1986)

Since they failed to do so, their request has no merit. The Court has no jurisdiction and they have waived altogether any argument to that effect and this Court should not give any weight to it. As a result, the portions of Appellees response should be stricken from the record.

"A party who neglects to file a cross-appeal may not use his opponent's appeal as a vehicle for attacking a final judgment in an effort to diminish the appealing party's rights thereunder." *Figueroa v. Rivera,* 147 F.3d 77, 81 (1st

Cir.1998). This is exactly what the defendants seek to do here. The prohibition on this kind of attack is "'inveterate and certain.' " *El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 479, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (quoting *Morley Constr. Co. v. Md. Cas. Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593 (1937)). The cross-appeal requirement "is not there to penalize parties who fail to assert their rights but is meant to protect institutional interests in the orderly functioning of the judicial system, by putting opposing parties and appellate courts on notice of the issues to be litigated and encouraging repose of those that are not." *Id.* at 481–82, 119 S.Ct. 1430. Sueiro Vazquez v. Torregrosa de la Rosa, 494 F.3d 227, 232 (1st Cir. 2007)

See Fed.R.App.P.3(c) (requiring, *inter alia,* that a notice of appeal "designate the judgment, order or part thereof appealed from"); *see also Smith v. Barry,* 112 S.Ct. 678, 682 (1992) ( "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review"); *Kotler v. American Tobacco Co.,* 981 F.2d 7, 10-11 (1st Cir.1992) (similar). Biggins v. Hazen Paper Co., No. 91-1591, 1994 WL 398013, at *1 (1st Cir. June 27, 1994)

In the alternative, without waving the forgoing, Plaintiff's remarks about this topic are found in our Motion for Reconsideration which the district court granted in reconsideration. (**See App. 258-283**)

### III.   CONCLUSION

Here, taking the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor," as the Court must do at this stage, it must be concluded that Ms. Serrano has a valid cause of action towards trial for disability discrimination, therefore, it must survive summary judgment. Plaintiff has proven all the elements necessary for an ADA discrimination claim, retaliation and sex discrimination in the basis of pregnancy, respectively.

### PRAYER

For the foregoing reasons, the plaintiff-appellant respectfully asks the First Circuit Court of Appeals to reverse the District Court's decision dismissing claims, remand the case back to the District Court of Puerto Rico for a fact-finding *jury trial* and grant relief accordingly. Costs should also be awarded to plaintiff-appellant.

**RESPECTFULLY SUBMITTED.**

### <u>CERTIFICATE OF SERVICE:</u>

I hereby certify that on this same date, this motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

In Guaynabo, Puerto Rico, this 27th day of January 2023.

**HERNANDEZ-OHARRIZ&
SANTIAGO, P.S.C.**
Centro Internacional de Mercadeo 1
100 Carr. 165, Suite 612
Guaynabo, PR 00908
Tel: (787) 378-5630
Fax: (787) 775-1672

_**s/ Edgardo J. Hernández Ohárriz**_
**Edgardo José Hernández Ohárriz**
U.S.C.A. No. 1193435
ehernandez@lawservicespr.com

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS
AND
TYPE STYLE REQUIREMENTS**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B)(ii) because this Reply brief contains no more than half of the type in 32(a)(7)(B)(1): approx. **3,103 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f).

2.  This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type of style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14 pt. font.

3.  I hereby certify that to the best of my knowledge and belief this brief complies with the Fed. R. App. P. 32 (a) in that as per my word processing system the total word count is approx. 3,103.

/s/ Edgardo Hernández-Ohárriz

**ADDENDUM TO APPELANT'S REPLY BRIEF**
**In accordance with Rule 28(f)**

| Table of Contents | Docket | Page |
|---|---|---|
| 1. Excerpts from the Collective Bargaining Agreement between The American Federation of Government Employees, AFL-CIO and The Transportation Security Administration | | **1-9** |
| 2. Excerpts from TSA MD 11000.63-1 Handbook, *Absence and Leave* | | **10-36** |

# COLLECTIVE BARGAINING AGREEMENT

### between

### The American Federation of Government Employees, AFL-CIO
### and
### The Transportation Security Administration

### —— Effective: December 9, 2012 ——





Transportation Security
Administration

Addendum No. 001

Exhibit G-8

# TABLE OF CONTENTS

PREAMBLE ......................................................................................................................1

ARTICLE 1:  PERFORMANCE MANAGEMENT PROCESS ......................................2

    A.  PURPOSE .........................................................................................................2
    B.  GENERAL PRINCIPLES .................................................................................2
    C.  RATING OFFICIALS .......................................................................................3
    D.  PERFORMANCE PLANNING.........................................................................3
    E.  INFORMAL DISCUSSIONS ............................................................................4
    F.  PROGRESS REVIEWS.....................................................................................5
    G.  COMMUNICATIONS .......................................................................................6
    H.  ACTIONS AFFECTING THE PERFORMANCE MANAGEMENT PROCESS............6
    I.  END OF YEAR REVIEW AND RATING ........................................................8
    J.  DOCUMENTATION .........................................................................................8
    K.  IMPROVING PERFORMANCE .......................................................................9
    L.  REPORTING ...................................................................................................10
    M.  GRIEVANCES ................................................................................................10
    N.  IMPLEMENTATION ......................................................................................10

ARTICLE 2:  AWARDS AND RECOGNITION PROCESS  ...................................11

    A.  PURPOSE .......................................................................................................11
    B.  .......................................................................................................................11
    C.  AWARD CATEGORIES.................................................................................11
    D.  LOCAL AIRPORT AWARDS AND RECOGNITION ..................................12
    E.  GENERAL ......................................................................................................12
    F.  JOINT AWARDS COMITTEES.....................................................................13
    G.  AWARDS AND RECOGNITION NOMINATION PROCEDURES .............14
    H.  GRIEVANCE RIGHTS ..................................................................................15

ARTICLE 3:  ATTENDANCE MANAGEMENT PROCESS ...................................16

    A.  PURPOSE .......................................................................................................16
    B.  LEAVE PROCEDURES – GENERAL............................................................16
    C.  TYPES OF LEAVE .........................................................................................17
        1.  ANNUAL LEAVE...........................................................................17
        2.  SICK LEAVE ..................................................................................18

i

Addendum No. 002

3.  FAMILY AND MEDICAL LEAVE ACT (FMLA) ...................................................22
4.  COMPENSATORY TIME ...................................................................................27
5.  COURT LEAVE ................................................................................................27
6.  EXCUSED ABSENCE........................................................................................27
7.  ADMINISTRATIVE LEAVE .............................................................................29
8.  LEAVE WITHOUT PAY (LWOP)......................................................................29

D.  ABSENCE WITHOUT LEAVE (AWOL)...................................................................31
E.  VOLUNTARY LEAVE TRANSFER PROGRAM (VLTP)...........................................31
F.  BREAKS.................................................................................................................32
G.  HOLIDAYS ...........................................................................................................33
H.  TIME CLOCK STATIONS ......................................................................................33

ARTICLE 4:  SHIFT AND ANNUAL LEAVE BID PROCESS...................................................34

A.  PURPOSE .............................................................................................................34
B.  DEFINITIONS .......................................................................................................34
C.  RESPONSIBILITIES ..............................................................................................34
D.  SHIFT BID PROCESS ............................................................................................35
E.  ANNUAL LEAVE BID PROCESS ...........................................................................39

ARTICLE 5:  SHIFT TRADE POLICY .................................................................................42

A.  PURPOSE .............................................................................................................42
B.  DEFINITIONS .......................................................................................................42
C.  RESPONSIBILITIES ..............................................................................................42
D.  PROCESS .............................................................................................................43

ARTICLE 6:  TRANSFER POLICY .....................................................................................47

A.  PURPOSE .............................................................................................................47
B.  DEFINITIONS
C.  EMPLOYEE OPTIONS FOR TRANSFERS ...............................................................47
D.  ELIGIBILITY ........................................................................................................47
E.  NATIONAL TRANSFER PROGRAM PROCESS .......................................................48
F.  TSA JOB SWAP PROGRAM PROCESS...................................................................50
G.  TEMPORARY TRANSFERS ...................................................................................52

ARTICLE 7:  PROCESS FOR WORK STATUS CHANGE FROM
             FULL-TIME TO PART-TIME AND VICE VERSA...........................................53

Addendum No. 003

A.  PURPOSE....................................................................................53
B.  DEFINITIONS..............................................................................53
C.  RESPONSIBILITIES .....................................................................53
D.  WORK STATUS CHANGE FROM PART-TIME TO FULL-TIME ............53
E.  WORK STATUS CHANGE FROM FULL-TIME TO PART-TIME ............55
F.  DOCUMENTATION OF WORK STATUS CHANGE .............................55
G.  MEMBERS OF UNIFORMED SERVICES .......................................55

ARTICLE 8:  UNIFORMS AND UNIFORM ALLOWANCES ...................................57

A.  PURPOSE....................................................................................57
B.  DEFINITIONS..............................................................................57
C.  INITIAL UNIFORM ALLOTMENT UPON HIRE..............................57
D.  ANNUAL REPLACEMENT ALLOTMENT .......................................58
E.  IKE JACKETS...............................................................................58
F.  SHOES.......................................................................................58
G.  APPROVED UNIFORM ITEM COMBINATIONS .............................59
H.  OPTIONAL UNIFORM ITEMS .......................................................60
I.  UNIFORM ALLOWANCE...............................................................61
J.  GEOGRAPHIC AND ENVIRONMENTAL CONSIDERATIONS...............62
K.  UNIFORM COMMITTEE ...............................................................62
L.  PROPER USE OF UNIFORMS .......................................................63
M.  INCLEMENT WEATHER ...............................................................63
N.  IMPLEMENTATION .......................................................................63

ARTICLE 9:  SELECTION PROCESS FOR SPECIAL ASSIGNMENTS ................64

A.  PURPOSE....................................................................................64
B.  DEFINITIONS..............................................................................64
C.  RESPONSIBILITIES .....................................................................65
D.  ELIGIBILITY ...............................................................................65
E.  PROCESS ....................................................................................65

ARTICLE 10:  PARKING SUBSIDIES ...............................................................68

ARTICLE 11:  FACILITIES AND SERVICES WITHIN
        THE CONTROL OF TSA MANAGEMENT ...................................69

A.  PURPOSE....................................................................................69

iii

Addendum No. 004

B.  RESPONSIBILITIES ................................................................................69

C.  FACILITIES FOR EMPLOYEE USE ....................................................69

D.  SERVICES FOR EMPLOYEE USE .......................................................74

E.  COMMUNICATIONS ..............................................................................76

F.  DISTRIBUTION OF COLLECTIVE BARGAINING AGREEMENT...........................79

G.  IMPLEMENTATION ...............................................................................79

APPENDIX A:  COLLATERAL EFFECT ...............................................................80

APPENDIX B:  SHOE STYLE GUIDE ...................................................................81

EXECUTION OF AGREEMENT ...........................................................................99

INDEX ............................................................................................................101

## *ARTICLE 3: ATTENDANCE MANAGEMENT PROCESS*

**A.  *PURPOSE:***  This Article sets forth the attendance management process for employees.  The Parties recognize:

1.  Employees are expected to report to work on time and to be on duty at all times during their tour of duty except during meal breaks and when on approved leave; and

2.  Leave is provided to allow employees an annual vacation period of extended absence for rest and recreation and to provide periods of time off for personal, emergency, and medical purposes; therefore,

3.  The Parties agree to a standardized leave policy and system to accrue and use leave across all facilities in accordance with TSA Management Directive 1100.63-1, *Absence and Leave*, and Handbook dated October 5, 2011, and this Article. In the event of a conflict, the provisions of this Article shall govern.

## *B.  LEAVE PROCEDURES - GENERAL:*

1.  Employees will use OPM Form 71, or electronic version, *Request for Leave or Approved Absence*, (OPM 71) when requesting leave.  Local offices are not authorized to modify OPM 71 or to develop and use other forms to request leave.

    The employee's leave request (OPM 71) should include the day(s), type of leave requested, and number of hours.  If the request is for less than a full day, it will include the specific hours (from-to).

2.  Employees will not be denied accrued leave based solely on their leave balance.  Leave will be denied only for appropriate reasons and not as a form of discipline.

3.  Employees should notify management at least 60 minutes prior to the start of the employee's scheduled shift to request unanticipated leave.  In the event the employee is presented with circumstances that would reasonably preclude him/her from contacting management, notification should be made as soon as possible.  Upon return to duty, the employee will submit a completed OPM 71 and documentation that might be required to substantiate the absence.

4.  The minimum charge for leave categories is 15-minute increments, except military leave is charged in one-hour increments.

5.  Management will timely approve or deny leave requests and provide a copy of the leave request (OPM 71) to the employee.  When denying an employee's leave request, management will indicate the reason for the denial on the employee's OPM 71. Management will file the approved or denied leave request (OPM 71) with the employee's time and attendance records. Such records will not include detailed medical documentation.

16

6.  Management may meet with the employee at any time to review and/or discuss his/her attendance record. Employees may participate in this discussion. The employee will be given the opportunity to advise management of any reasons or extenuating circumstances concerning any attendance issues. Management and the employee are encouraged to discuss strategies for improving the employee's attendance during this discussion. The discussion may include possible change of hours or shifts which may address the attendance issues. When indicated, management will advise the employee of their rights under FMLA. Either party may issue internal guidance that does not conflict with this Article to their managers or union officials on this subsection. Such guidance will not trigger a bargaining obligation.

## C. TYPES OF LEAVE:

### 1. ANNUAL LEAVE

a)  The use of accrued annual leave is the right of the employee, subject to the right of the Employer to approve the time at which leave may be taken.

b)  Employees will timely receive a copy of both approved and denied requests for annual leave.

c)  Employees may use annual leave in lieu of sick leave subject to the rules governing the use of sick leave.

d)  In accordance with the provisions of Article 4, *Shift and Annual Leave Bid Process*, an annual leave bid will be offered prior to the beginning of the leave year. At the conclusion of the annual leave bid, annual leave requests will be reviewed and approved on a first come basis.

e)  Leave requested in accordance with this Article will be approved absent a legitimate operational need.

f)  Advancing Annual Leave:

   i.  Full-time and part-time employees may be advanced no more than the amount of annual leave that would be accrued in the remainder of the leave year. However, advanced annual leave may not be granted to any employee if there is a likelihood that the employee will retire, be separated, or resign from the Department before the date the employee will have earned the leave. The advancement of annual leave is not an entitlement.

   ii.  Upon separation from TSA (*e.g.*, retirement, resignation, or removal), employees must repay the balance of any remaining advanced annual leave. An employee may submit a written waiver for the unpaid balance.

17

481                    Addendum No. 007

g) Restoration of Annual Leave:

    i. Leave requested and approved on or before November 1 is eligible for restoration.

    ii. If scheduled and approved annual leave is forfeited, it can be restored for employee use if it meets one of the criteria set below:

        1. <u>Exigencies of the public business</u>: Annual leave that was scheduled and approved but cancelled as a result of an operational exigency is eligible for restoration. In order for a supervisor to cancel leave based on an operational exigency, he/she must show that there was no reasonable alternative to canceling the leave and that another employee could not perform the work. The supervisor must also advise the affected employee of the operational exigency that necessitates the cancellation of leave.

        2. <u>Sickness</u>: Absent unusual circumstances, annual leave scheduled during the last quarter of the leave year that could not be used because of an employee's illness or injury would be approved for restoration.

        3. <u>Administrative Error</u>: Annual leave forfeited because of administrative error (failure to change a leave accrual rate, incorrect service computation date, etc.) will be restored in cases where the error was made by an agency representative.

h) <u>Requesting Restoration of Annual Leave</u>: Employees who forfeit annual leave because of exigencies of the public business, sickness, or administrative error may request to have the leave restored following the end of the affected leave year. Leave must be forfeited before a request for restoration can be submitted. Employees must complete TSA Form 1185 (Annual Leave Restoration Request) when requesting restoration of annual leave.

i) <u>Using Restored Annual Leave</u>: Restored annual leave is maintained in a separate leave account and does not change the employee's annual leave ceiling (e.g., 240 hour maximum). However, restored annual leave must be scheduled and used by the end of the leave year ending two (2) years after the leave year in which the leave was restored.

j) Employees whose request for restored annual leave has been approved will have the leave timely restored following the end of the leave year.

## 2. *SICK LEAVE*

a) Sick leave is a benefit that may be used by the employee for any of the following reasons:

    i. Medical, dental, or optical examination or treatment;

    ii. Incapacitation due to physical or mental illness, injury, pregnancy, or childbirth;

iii. To prevent exposure of a communicable disease to other employees and/or the general public:

iv. To participate in activities related to the adoption of a child; and

v. For medical-related family care and bereavement purposes.

b)  In the event of an unanticipated absence, employees will call the designated telephone number for call-outs at their airport.  An employee who expects to be absent more than one day will inform the supervisor of the expected date of the return to duty.  In the case of extended illness, for which the employee has provided medical documentation or management has confirmed the employee's incapacitation, daily reports will not be required. Upon return to duty, the employee will submit the OPM 71 for the length of the absence.

c)  If an employee has insufficient sick leave accrued, the employee can request Leave Without Pay (LWOP) or other available leave for an absence for which sick leave would otherwise be appropriate.

d)  Safeguarding medical documentation:

i. Medical documentation relating to an employee or an employee's family member must not be attached to the employee's time and attendance records, including OPM Form 71 *Request for Leave or Approved Absence*, and must not be included in the employee's Official Personnel Folder (OPF), eOPF, or locally maintained employee files, and will be maintained in a separate file.

ii. Medical documentation shall be protected and secured at all times and not left out for access/viewing by unauthorized individuals.  Such documentation is confidential information, covered by the Privacy Act, and must be stored in a locked cabinet. Retention and access to such information shall be in accordance with TSA Management Directive (MD)/Handbook No. 1100.63-1, *Absence and Leave*.

iii. Access to the medical documentation will be restricted to management officials on a bona fide "need to know" basis.

iv. Individuals performing timekeeping functions do not have a need to know the medical reason an employee has requested sick leave, LWOP, other paid leave, or leave under FMLA. Information concerning an employee's or an employee's family member's health condition should not be kept with the payroll records or recorded in the payroll system.

e)  Approving Sick Leave Requests

19

# TSA MD 1100.63-1, Handbook

Absence and Leave

| | |
|---|---|
| Policy Effective: | January 13, 2005 |
| Handbook Published: | January 13, 2005 |
| Handbook Revised: | October 5, 2011 |

**APPROVAL**

*Signed*

_____

Sean J. Byrne
Assistant Administrator for Human Capital

**NOTE:** *Pursuant to Section 101 of the Aviation and Transportation Security Act (49 U.S. C. 114(n)), the Transportation Security Administration (TSA) has established policy which supersedes the Federal Aviation Administration (FAA) orders, policies, guidance, and bulletins addressing Absence and Leave issued under the FAA Personnel Management System.*

*This Handbook and all related Appendices and/or Attachments contain stipulations to implement the provisions of TSA MD 1100.63-1, Absence and Leave. Until such time as TSA MD 1100.63-1 is rescinded, the Management Directive, Handbook, Appendices, and any Attachments are considered TSA policy, and must be applied accordingly.*

### Summary of Changes:

Section B, General Leave Policies and Procedures, subsection 12 and Section M, Maternity and Paternity Absence, subsection 6, were revised to add policy and procedures for the Nursing Mothers Program.

Section C, Annual Leave, subsections 1 and 5 were revised to include treatment of restored leave for employees joining TSA from other Federal agencies.

Section E, Compensatory Time Off, subsection 1 title change from General to General Information.

Section J, Administrative Leave, subsection 1, was revised to include a provision for adjusting an employee's work schedule to a conventional schedule during a period of administrative leave.

# Table of Contents

**Section**                                                                                                 **Page#**

**A.    DEFINITIONS**                                                                                          A-1

**B.    GENERAL LEAVE POLICIES AND PROCEDURES**

   1.    Requests for Leave...................................................................................B-1
   2.    Charging Leave......................................................................................B-2
   3.    Approving/Denying Leave......................................................................B-3
   4.    Attendance.............................................................................................B-3
   5.    Insufficient Leave Balance.....................................................................B-4
   6.    Medical Treatment for Disabled Veterans............................................B-5
   7.    Safe Guarding Medical Documentation.................................................B-5
   8.    Tardiness...............................................................................................B-6
   9.    Holidays................................................................................................B-7
  10.    Meal Breaks...........................................................................................B-8
  11.    Travel and Training................................................................................B-9
  12.    Nursing Mothers Program......................................................................B-10

**C.    ANNUAL LEAVE**

   1.    General Information...............................................................................C-1
   2.    Earning Rates of Annual Leave..............................................................C-2
   3.    Approval of Annual Leave Requests......................................................C-5
   4.    Advancing Annual Leave.......................................................................C-5
   5.    Maximum Leave Accumulation (by category)......................................C-6
   6.    Scheduling Annual Leave to Avoid Forfeiture......................................C-9
   7.    Restoration of Annual Leave..................................................................C-9
   8.    Requesting Restoration of Annual Leave...............................................C-10
   9.    Use of Restored Annual Leave...............................................................C-11
  10.    Creditable Service for Annual Leave.....................................................C-12
  11.    Lump Sum Payment of Annual Leave....................................................C-13

**D.    SICK LEAVE**

   1.    General Information...............................................................................D-1
   2.    Earning Rates of Sick Leave and Maximum Accumulation....................D-2
   3.    Administratively Acceptable Documentation and Medical Documentation.................D-2
   4.    Use of Sick Leave for General Family Medical Care and Bereavement Purposes.......D-3
   5.    Sick Leave to Care for a Family Member with a Serious Health Condition.................D-4
   6.    Sick Leave for Adoption Purposes.........................................................D-5
   7.    Approval of Sick Leave Requests..........................................................D-5
   8.    Advance Sick Leave..............................................................................D-6
   9.    Documentation for Absences of 3 Workdays or Less.............................D-8
  10.    Documentation for Absences of More Than 3 Workdays.......................D-8

11.  Excessive Use of Unscheduled Sick Leave .................................................. D-9
12.  Substitution of Sick Leave for Annual Leave ............................................. D-9
13.  Re-credit of Sick Leave ............................................................................... D-9

**E.    COMPENSATORY TIME OFF**

1.  General Information ..................................................................................... E-1
2.  Compensatory Time Off in Lieu of Overtime Pay ..................................... E-1
3.  Compensatory Time Off for Travel ............................................................ E-2
4.  Religious Accommodation and Compensatory Time Off for Religious Observances .... E-3

**F.    MILITARY LEAVE**

1.  General Information ..................................................................................... F-1
2.  Eligibility .................................................................................................... F-3
3.  Military Leave (Regular) ............................................................................ F-3
4.  Accumulation and Charging of Military Leave (Regular) .......................... F-3
5.  Military Leave (Emergency) ....................................................................... F-5
6.  Other Military Leave Authorities ................................................................ F-6
7.  Granting Excused Absence for Returning Employees ................................. F-6

**G.    HOME LEAVE**

1.  General Information ..................................................................................... G-1
2.  Eligibility .................................................................................................... G-1
3.  Accrual Rate ................................................................................................ G-1
4.  Approval and Use of Home Leave .............................................................. G-3
5.  Refund of Home Leave ............................................................................... G-4

**H.    COURT LEAVE**

1.  General Information ..................................................................................... H-1
2.  Service as a Juror ........................................................................................ H-2
3.  Service as a Witness .................................................................................... H-2
4.  Fees and Expenses for Service as Juror or Witness .................................... H-3
5.  Dismissal from Service as a Juror or Witness ............................................. H-4

**I.    EXCUSED ABSENCE**

1.  General Information ..................................................................................... I-1
2.  Registration and Voting .............................................................................. I-2
3.  Military and Law Enforcement Funerals ..................................................... I-3
4.  Funeral Leave (Member of the Armed Forces) ........................................... I-3
5.  Change of Duty Station ............................................................................... I-3
6.  Career Transition Assistance Related to a Workforce Reduction ............... I-4
7.  Professional Organizations' Conferences and Conventions ........................ I-5
8.  Leave for Bone Marrow and Organ Donations ........................................... I-5
9.  Blood Donations .......................................................................................... I-5

   10.  Officially Sponsored Physical Fitness Programs, Fitness Centers, and Health Units ......I-6
   11.  Disruptions to Operations .......................................................................................I-7
   12.  Absences to Perform Community Service ...............................................................I-8
   13.  Absences Due to On-the-Job Injuries ....................................................................I-9

## J.   ADMINISTRATIVE LEAVE

   1.  General Information....................................................................................................J-1
   2.  Proposed Removals and Proposed Indefinite Suspensions...............................J-2
   3.  Official Investigations and Management Inquiries.......................................J-2

## K.   LEAVE WITHOUT PAY (LWOP)

   1.  General Information.................................................................................................. K-1
   2.  Use of LWOP........................................................................................................... K-1
   3.  Extended Use of LWOP.......................................................................................... K-3
   4.  Effects of Nonpay Status on Leave and Benefits......................................... K-3

## L.   ABSENCE WITHOUT LEAVE (AWOL)

   1.  General Information..................................................................................................L-1
   2.  Effect on Benefits and Holidays .........................................................................L-2

## M.   MATERNITY AND PATERNITY ABSENCES

   1.  General Information.................................................................................................M-1
   2.  Leave Requests for Maternity and Paternity Purposes ..................................M-2
   3.  VLTP for Maternity and Paternity Purposes .....................................................M-2
   4.  FMLA for Maternity and Paternity Purposes ...................................................M-3
   5.  Leave for Paternity Purposes ...............................................................................M-4
   6.  Nursing Mothers Program.....................................................................................M-4

## N.   VOLUNTARY LEAVE TRANSFER PROGRAM (VLTP)

   1.  General Information ................................................................................................ N-1
   2.  Application Procedures to Become a Leave Recipient.................................... N-3
   3.  Approval of Application to Become a Leave Recipient .................................. N-4
   4.  Leave Donations ..................................................................................................... N-5
   5.  Use of Donated Leave ........................................................................................... N-7
   6.  Termination of a Medical Emergency ................................................................ N-8
   7.  Termination of a Natural Disaster ....................................................................... N-8
   8.  Unused Donated Leave .......................................................................................... N-9
   9.  Recordkeeping ...................................................................................................... N-10
   10.  Worker's Compensation and VLTP.................................................................... N-10
   11.  Sample Letters ...................................................................................................... N-11

## O.    FAMILY AND MEDICAL LEAVE ACT (FMLA)

1. General Information.................................................................................... O-1
2. Leave Entitlement .................................................................................... O-2
3. Employee Eligibility ............................................................................... O-2
4. Agency Notification Requirements......................................................... O-3
5. Employee Responsibilities Under FMLA............................................... O-3
6. Eligible Family Members Basic FMLA Leave........................................ O-4
7. Ineligible Family Member/Relationships ............................................... O-5
8. Serious Health Condition........................................................................ O-5
9. Medical Documentation for Basic FMLA Leave .................................... O-7
10. Documentation for Adoption or Foster Care Placement............................ O-10
11. Health Care Providers for Basic FMLA Leave......................................... O-11
12. Approving a Request for Leave Under FMLA .......................................... O-11
13. Use of Leave ............................................................................................. O-12
14. Timeframes for Use of Basic and Qualifying Exigency FMLA Leave ....... O-13
15. Intermittent Use of FMLA and Reduced Leave Schedule......................... O-14
16. Basic FMLA for Maternity and Paternity Purposes ................................. O-15
17. FMLA to Care for Injured Members of the Armed Forces ....................... O-15
18. Guidelines for use of FMLA leave because of a Qualifying Exigency ...... O-21
19. Guidelines for TSA Employees Under the Provisions of Title I of FMLA.............. O-23
20. Returning from a FMLA Qualifying Absence........................................... O-24
21. Recordkeeping .......................................................................................... O-25
22. FMLA Fact Sheet ..................................................................................... O-26
23. WHD Publication 1420............................................................................. O-29
24. Sample Memorandum................................................................................ O-30

**APPENDIX A:  EFFECTS OF NONPAY STATUS**

**A.    DEFINITIONS:**

1.  <u>Absence Without Leave (AWOL)</u>:  Status of an employee absent from duty without authorization.  An employee who is AWOL is not in an approved leave status.

2.  <u>Absent – Uniformed Services (Absent-US)</u>:  A temporary approved absence from duty in a nonpay status granted at the employee's request to perform duty with the uniformed services.  Formerly known as Leave Without Pay – Uniformed Services (LWOP-US).  It is coded in webTA as LWOP-US.

3.  <u>Administrative Leave</u>:  The placement of an employee in a paid non-duty status when the employee's continued presence in the workplace may pose a threat to the employee or others, result in loss of or damage to Government property, or otherwise jeopardize legitimate Government interests.  Generally, administrative leave is implemented (1) during the notice period for an employee whose removal or indefinite suspension has been proposed or (2) during the period of an official investigation or management inquiry.  Administrative leave must be approved by a designated official. The duration of administrative leave must be kept to a minimum.

4.  <u>Administrative Workweek</u>:  Any period of seven consecutive 24-hour periods designated by the Assistant Secretary or appropriate designee.  Generally, the administrative workweek begins on Sunday and ends on Saturday.

5.  <u>Administratively Acceptable Documentation/Evidence</u>: Documentation such as employee self-certification, medical documentation, or other documentation sufficient to warrant approval of a leave request that an employee may be required to provide to his/her supervisor or designated management official to support a request for leave.

6.  <u>Adoption</u>:  A legal process in which an individual becomes the legal parent of another person's child.  For use of sick leave and FMLA leave, the legal process includes all necessary and related travel.

7.  <u>Annual Leave</u>:  A form of paid leave earned by an employee on the basis of years of Federal service which may be used for vacations, rest and relaxation, family needs, other outside activities, emergencies not covered by sick leave, and other personal business.

8.  <u>Alternative Work Schedule</u>:  A generic term that applies to either Flexible Work Schedules (FWS), Compressed Work Schedules (CWS), or Variable Work Schedules (VWS).

9.  <u>Approved Leave</u>:  An employee's absence from the work place has either been requested by the employee, initiated by management, or is in accordance with applicable federal statutes, regulations, and agency policy.  Such leave is either approved by the employee's immediate supervisor or by a higher level management official within the agency.  Categories of leave that meet the definition of "approved

43. <u>Leave Without Pay – Office of Workers' Compensation Program (LWOP-OWCP)</u>: A temporary approved absence from duty in a nonpay status granted when an employee has a work-related temporary disability associated with an accepted OWCP claim. Proper acceptable medical documentation should support the temporary disability.

44. <u>Leave Without Pay – Uniformed Services (LWOP-US)</u>: See Absent – Uniformed Services (Absent-US).

45. <u>Management Official</u>: For the purposes of leave, a management official is an employee's immediate supervisor or higher level supervisor within an employee's chain of supervision. Management officials for leave purposes also include individuals serving in acting supervisory positions and individuals designated by a management official to assume leave approval responsibilities for a specified period of time.

46. <u>Meal Break</u>: A minimum of 30 minutes of unpaid time set aside for eating. Generally a meal break may be 30 to 60 minutes in length and extends the employee's workday by an equivalent amount. A meal break is **not** considered to be part of the basic workweek/work requirement, except in those situations when the supervisor requires the employee to perform his or her regular duties while eating.

47. <u>Medical Documentation - Use of Sick Leave</u>: A form of administratively acceptable documentation which may be required to support a request for sick leave. When required, medical documentation at a minimum must include the following:

   (a)   Date the medical condition began;

   (b)   A clear statement that the employee is or was incapacitated for duty;

   (c)   Information on how the condition affects the employee's ability to perform the duties of the position;

   (d)   The expected duration of the employee's absence; and

   (e)   The signature of the employee's personal physician or authorized health care provider.

48. <u>Medical Documentation – Basic FMLA Leave</u>: Medical documentation that is required when requesting basic FMLA leave for a serious health condition and, at a minimum, must include:

   (a)   The date the serious health condition began;

Transportation Security Officers (TSOs) hired after April 2, 2007, work schedules consisting of 16 to 25 hours per week (no more than 32 to 50 hours per pay period).

59. Pay Status:  Hours spent working or on paid leave.

60. Reduced Leave Schedule:  For FMLA purposes, this is a leave schedule that reduces the employee's usual number of hours of work per workday or workweek.  The number of hours by which the schedule is reduced are counted as hours of leave taken under FMLA.

61. Serious Health Condition:  An illness, injury, impairment, or physical or mental condition that involves: inpatient hospital care; continuing treatment by a health care provider; pregnancy; ongoing treatment for a chronic condition; permanent/long-term conditions that require supervision; and non-chronic conditions that require multiple treatments.

62. Serious Injury or Illness:

(a)    In the case of a member of the Armed Forces (including a member of the National Guard or Reserves), "serious injury or illness" means an injury or illness that was incurred by the member in the line of duty on active duty in the Armed Forces (or existed before the beginning of the member's active duty and was aggravated by service in the line of duty on active duty in the Armed Forces) and that may render the member medically unfit to perform the duties of the member's office, grade, rank, or rating.

(b)    In the case of a veteran who was a member of the Armed Forces (including a member of the National Guard or Reserves) at any time during the period 5 years preceding the date on which the veteran undergoes medical treatment, recuperation, or therapy, "serious injury or illness" means an injury or illness that was incurred by the member in the line of duty on active duty in the Armed Forces (or existed before the beginning of the member's active duty and was aggravated by service in the line of duty on active duty in the Armed Forces) and that manifested itself before or after the member became a veteran.

63. Set Aside Accounts:  Annual leave and sick leave balances that an employee may accumulate while using leave donated through the VLTP.  A full-time employee may not accumulate more than 40 hours each of annual leave and sick leave while in the VLTP.  Amounts are pro-rated for a part-time employee.

64. Sick Leave:  A form of leave earned by an employee, which the employee may use for:

(a)    Medical, dental, or optical examination or treatment;

(b)    Incapacitation by physical or mental illness, injury, pregnancy or childbirth;

(c)     Communicable disease that would jeopardize the health of others by the employee being present on the job;

(d)     Absence from work for adoption-related activities;

(e)     Care of a family member for general medical conditions or a serious health condition; or

(f)     Bereavement purposes.

65.  Son or Daughter:  A biological, adopted or foster child; a stepchild; a legal ward; or a child of a person who stood in loco parentis, including the son or daughter of an employee's spouse or domestic partner.  For basic FMLA leave, the child must be under 18 years of age or if 18 years of age or older, incapable of self-care because of a mental or physical disability.

66.  Son or Daughter of a Covered Service Member:  A covered service member's biological, adopted, or foster child, stepchild, legal ward or a child for whom the covered service member stood in loco parentis, and who is of any age.

67.  Son or Daughter on Active Duty:  The employee's biological, adopted or foster child; stepchild; legal ward or a child for whom the employee stood in loco parentis, who is on active duty or a call to active duty status, and who is of any age.

68.  Spouse:  An individual who is a husband or wife of the employee pursuant to a marriage that is a legal union between one man and one woman.  This includes common law marriage between one man and one woman in states where common law marriages are recognized.

69.  Substantial Loss of Income:  Twenty-four hours of leave without pay for a full-time employee experiencing a medical emergency.  For a part-time employee, this equates to thirty percent (30%) or more of the average number of hours in the employee's biweekly scheduled tour of duty.

70.  Summons:  A subpoena or an official written request or invitation issued by the court or authority responsible for the conduct of the judicial proceeding.

71.  Time-Off Award:  Time off from duty granted to an employee that may be used for the same purposes as annual leave, without loss of pay or charge to the employee's annual leave, sick leave or compensatory time off accounts.  Time-off awards recognize employee accomplishments, and must be used within 26 pay periods (one year) of the effective date of the award.

72.  Tour of Duty:  The hours of a day (a daily tour of duty) and the days of an administrative workweek (a weekly tour of duty), which constitute an employee's regularly scheduled administrative workweek.

B.    **GENERAL LEAVE POLICIES AND PROCEDURES:**

1.    Requests for Leave

(a)    Supervisors or designated management officials are responsible for informing employees, in writing, of the leave requesting procedures for their organizational unit and should provide annual reminders of the procedures or more frequent reminders if changes occur.  HCM 630-5, *Local Attendance and Leave Guidance*, provides TSA policy and procedures for establishing local guidelines for attendance and the use of leave.

(b)    The OPM Form 71, Request for Leave or Approved Absence, is the required method for employees to use when requesting leave.

**NOTE***:*  Local offices are not authorized to modify the OPM Form 71 or to develop and use other forms to request leave.

(c)    An employee who wishes to take leave is required to inform his or her supervisor in advance of the request following established procedures.  Leave requests should include the day(s), type of leave requested, and number of hours.  If the request is for less than a full day, it must include specific hours (from-to).

(d)    When an employee is, or will be, on an extended absence for 30 or more calendar days, airport/office management must notify the Office of Security, Personnel Security Division (PerSec) following the policy and procedures outlined in HCM 300-2, *Security-Related Notification Requirements for Extended Absence, Return to Duty, Restoration, and Reinstatement*.

(e)    Employees requesting unscheduled leave are required to follow local notification procedures.  Generally, employees must notify management 60 minutes prior to the start of the employee's scheduled shift.  In the event the employee is presented with circumstances that would reasonably preclude him/her from contacting management, notification should be made as soon as possible.  Administratively acceptable documentation may be required.  On a case-by-case basis, management determines to approve or deny employee requests for unscheduled leave.  Failure to submit a completed OPM Form 71 along with any required documentation upon return to duty or failure to follow leave requesting procedures may result in a charge of AWOL for the absence.

(f)    Employees who request leave under the Family and Medical Leave Act (FMLA) are strongly encouraged to submit required medical documentation with the OPM Form 71.  The employee's health care provider may provide the necessary documentation on his/her letterhead or through the use of forms WH-380E, Certification of Health Care Provider for Employee's Serious Health Condition or WH-380F, Certification of Health Care Provider for Family Member's Serious Health Condition.  See Section O of this Handbook.

(g)  Employees are responsible for scheduling and using restored annual leave, projected "use or lose" annual leave, compensatory time off in lieu of overtime pay, compensatory time off for travel, and time-off awards to avoid forfeiture.

(h)  Employees may use compensatory time off and annual leave for vacations, rest and relaxation, family needs, personal business and for situations generally covered by sick leave.

(i)  Employees may be required to provide "administratively acceptable" medical documentation when requesting to use compensatory time off or annual leave in place of sick leave.  Questions regarding "administratively acceptable" medical documentation should be addressed to local HR Liaisons or field counsel.

(j)  Once an employee is approved for disability retirement, he/she may not request or continue to use leave (paid or unpaid) beyond the end of the biweekly pay period in which the Office of Personnel Management (OPM) approves disability retirement for the employee.

2.  Charging Leave

(a)  The minimum charge for most leave categories is 15 minute increments. However, military leave is charged in one-hour increments, and home leave is charged in increments of one-day based on an 8 hour day.

(b)  Employees may not be charged leave on holidays, regular non-workdays and non-workdays authorized by administrative order.  When a non-workday is authorized by administrative order, an announcement will be issued by the Office of Human Capital identifying the date and reason for the non-workday.

(c)  Employees who are scheduled to work on a holiday (or other day designated as a non-workday by administrative order for most employees), and do not report to work should be charged absence without leave (AWOL) if the absence is not approved.

(d)  Management may not charge annual leave, sick leave, compensatory time off, or AWOL to an employee who refuses to work overtime or who does not report for scheduled overtime duty.  Failure of an employee to report for scheduled overtime is not tracked in the payroll system.  Management should document and track the employee's failure to report for scheduled overtime duty and take appropriate corrective or disciplinary action, as warranted.

(e)  Part-time employees are only charged leave for absences that occur on days and hours the employee is regularly scheduled to work.  A part-time employee is charged leave for non-overtime hours the employee is unable to work during the regularly scheduled workweek as long as the schedule is established in advance

of the start of the workweek.  A part-time employee is not charged leave for non-overtime hours scheduled after the start of the workweek.

(f)   TSA Office of Security Operations (OSO) canine handlers on approved leave (e.g., annual leave, sick leave, time-off awards, or LWOP) for the entire workday and continuing to provide care and feeding the canine receive one hour of non-overtime pay and are charged leave for the remaining hours in the workday.  If the canine handler is not providing care and feeding the canine (i.e., the canine is kenneled.), the employee is charged leave for the entire workday.

*Example*:  A canine handler who works a conventional work schedule, 8 hours per day – 5 days per week, is charged 7 hours of leave and receives 1 hour of regular pay when on approved leave for the entire workday.  If the canine is kenneled, the canine handler is charged 8 hours of leave.

3.   Approving/Denying Leave

(a)   Supervisors and designated management officials maintain the discretion to approve annual leave and compensatory time off requests based on the needs and workload of the organizational unit.

(b)   Generally, supervisors and designated management officials will not deny sick leave requests unless there is specific knowledge of employee misuse or abuse of sick leave or the employee does not provide administratively acceptable medical documentation when required.

(c)   Approved leave requests (OPM-71) must be filed with the employee's time and attendance records.  A copy of the approved leave request should be provided to the employee.

(d)   When denying a leave request, the supervisor or designated management official must indicate the reason for the denial on the OPM Form 71.

(e)   Denied leave requests must be filed with the employee's time and attendance records.  A copy of the denied leave request must also be provided to the employee.

4.   Attendance

Employees are expected to report for work on time and fit for duty and are expected to be on duty at all times during their tour of duty except during meal breaks and approved absences.

5. <u>Insufficient Leave Balance</u>

(a)   If an employee is out of the office on approved extended sick leave and has an insufficient leave balance to cover the absence, the employee will be placed on leave without pay (LWOP) if the supervisor or designated management official is unable to reach the employee or the employee's representative.  The employee is responsible for contacting the supervisor to determine other available leave options and will have the option of substituting appropriate paid leave for any period in which LWOP was charged in this circumstance.

**NOTE:**  This is an exception to the general rule that prevents management from placing an employee on LWOP without a request by the employee.  See section K of this handbook.

(b)   Employees are responsible for requesting only the leave that is available or will be available on the date of the requested leave.  Employees may request advance leave under the provisions of section C subsection 4 or section D subsection 8 of this handbook.  However, there is not an entitlement to be granted advance leave.

(c)   An employee who has exhausted his/her personal leave will be granted LWOP for absence related to illness when the employee has provided administratively acceptable documentation to cover the absence.  In these circumstances, the employee cannot be charged absence without leave (AWOL).  However, this does not entitle the employee to be approved for LWOP for an indefinite period of time.

(d)   An employee who exhausts all of his or her annual leave may request LWOP to cover absences.  However, the employee is not entitled to LWOP under these circumstances.

(e)   When management has approved a period of annual leave, sick leave, or compensatory time off and the employee has an insufficient leave balance, the employee must be given the option to request another form of appropriate leave or to cancel the leave request.  Management may not charge an employee AWOL for an approved period of leave when the employee has an insufficient leave balance.

***Example:***  In pay period 14, Mary requests and is approved to take 40 hours of annual leave in pay period 24.  In pay period 16, Mary has a medical emergency and she is out of work for 8 weeks.  She exhausts all available sick leave, annual leave, and compensatory time off.  In pay period 22, Mary's supervisor reviews her leave balances and realizes Mary will have 20 hours of annual leave available for use in pay period 24.  Mary's supervisor should give her the opportunity to request another form of appropriate leave or the leave request may be cancelled.  If management takes no action, Mary will receive a

combination of her available annual leave and LWOP for the period of approved leave. Mary cannot be charged AWOL under these circumstances.

(f)   Management has the authority to cancel an approved leave request based on the need to meet mission requirements or when the employee has insufficient leave to cover the absence. Employees failing to report for duty when leave has been cancelled may be charged AWOL. Notification of cancelled leave should be made in writing as far in advance of the approved leave dates as possible. TSA is not responsible for any expenses incurred resulting from the cancellation of an employee's leave request.

**NOTE:** Management should not cancel leave that has been approved for medical procedures/treatments (e.g., x-rays, inpatient or outpatient surgery).

6.   Medical Treatment for Disabled Veterans

(a)   Under the provisions of Executive Order 5396 a disabled veteran must be granted annual leave, sick leave, or leave without pay (LWOP), as appropriate, for medical treatment upon the employee's request and presentation of an official statement from a medical authority that such treatment is required.

(b)   Granting or authorizing a leave of absence to a disabled veteran is only mandatory when the treatment, examination, or absence is in connection with the disability.

(c)   The veteran must give prior notice of specific days and hours that absence is required for medical treatment in order that arrangements may be made for carrying on the work during his or her absence.

7.   Safe Guarding Medical Documentation

(a)   Medical documentation relating to an employee or an employee's family member **must not** be attached to the employee's time and attendance records, including OPM form 71s, and must not be included in the employee's Official Personnel Folder (OPF), eOPF, or locally maintained employee files. Medical documentation must be stored and maintained in a separate file as outlined below.

(b)   When medical documentation is received from an employee, it should be protected/secured at all times and not left out for access/viewing by unauthorized individuals.

(c)   Medical documentation must be kept in a separate file; be treated as sensitive, confidential information; and stored in a locked cabinet.

(d)   Access will be restricted to the employee's immediate supervisor and/or specified management officials on a "need to know" basis. This "need to

know" basis applies to leave approving officials and other agency representatives (i.e., Office of Chief Counsel and Office of Human Capital) with the authority to make decisions or to provide advice and guidance relating to the employee's request for leave related to the medical condition or any other employment issue.  It does not apply to management officials who merely want to gain information on an employee out of personal interest.

(e)   HR Specialists, administrative officers, and other individuals assigned or detailed to engage in HR functions **must not** discuss or disclose medical information to anyone, including management officials, who does not have a need to know, without proper authorization from the affected employee.

     *Example*:  An employee's medical condition should not be a topic at staff meetings or "water cooler" discussions.

(f)   Individuals performing timekeeping functions **do not** have a need to know the medical reason an employee has requested sick leave, LWOP, other paid leave, or leave under FMLA.  Information concerning an employee's or an employee's family member's health condition should not be kept with the payroll records or recorded in the payroll system.

8.   Tardiness

(a)   The supervisor may excuse occasional or unavoidable periods of tardiness, not in excess of 30 minutes.

     *Example:*  Unavoidable tardiness would include a major accident that closes part of the main interstate and prevents a significant number of employees from reporting for duty on time.

     *Example:*  The shuttle bus that transports employees from the parking lot to the terminal breaks down and employees have to wait for a replacement.

     *Example*:  The employee leaves his/her home well in advance to arrive at work on time.  There is a major traffic accident that causes a severe backup in traffic (announced on the media) and all alternate routes are also affected.  The individual contacts the airport to advise of the situation, yet is still 17 minutes late.  Management has the discretion to disregard the tardiness as it was no fault of the employee.  This results in no formal action against the employee and no charge to leave.

     **NOTE:**  The above examples are not meant to be all inclusive and should not prevent designated management officials from exercising sound judgment to grant excused absence to groups or individual employees where warranted.

(b)  If the conditions or frequency of the tardiness do not warrant approval of leave, the tardiness may be charged to absence without leave (AWOL), in multiples of 15 minutes, to cover the period of absence.

(c)  The minimum charge for AWOL is 15 minutes.  Additional charges are in 15 minute increments.  An employee may not be charged AWOL for absences or tardiness in increments of less than 15 minutes, and cannot be prevented from working if the absence or tardiness is less than 15 minutes.  If an employee arrives at work more than 15 minutes late but less than an additional increment of 15 minutes, the employee may only be charged AWOL for 15 minutes.

*Example*:  An employee arriving at work 20 minutes late may only be charged 15 minutes of AWOL, or an employee arriving at work 40 minutes late may only be charged 30 minutes of AWOL.

*Example*:  The employee is 20 minutes late for work and has no acceptable explanation (just over slept).  The individual could be charged 15 minutes of AWOL or be allowed to take 15 minutes of annual leave (or compensatory time off, if accrued).  In addition, management could impose appropriate disciplinary action depending upon the individual's attendance history.  Beyond this, management could allow the individual to stay beyond their normal working hours to make up the tardiness.  While this is a possible option, it should not become the routine manner to address the underlying issue.  If allowed to happen on a regular and recurring basis, the individual will not come to work on time because they know that no leave will be charged and they can make up the time.  This has a major impact on the morale of co-workers and makes it harder for management to deal with the real issue (attendance).

(d)  Habitual tardiness is a basis for disciplinary action.  Supervisors should document such tardiness and take the necessary action to address the problem.

*Example*:  The employee has day care issues and is late for work (5-10) minutes every day.  The individual cannot be charged 15 minutes of leave (or AWOL) as the tardiness does not equate to 15 minutes.  Management must counsel the employee and determine if changing the individual's starting time will correct the tardiness or initiate appropriate administrative action, e.g., letter of reprimand, suspension, etc.

9.  Holidays

(a)  The TSA benefits package includes ten Federal holidays each calendar year. For pay and leave purposes, the observed day or the employee's in lieu of holiday is the holiday.

(b)  Employees (excluding members of the Transportation Security Executive Service) who are authorized or required as part of their assigned duties to work

**D.   SICK LEAVE:**

1. <u>General Information</u>

    (a)   Sick leave may be granted to employees for any of the following reasons:

        (1)   Medical, dental, or optical examination or treatment;

        (2)   Incapacitation due to physical or mental illness, injury, pregnancy, or childbirth;

        (3)   To prevent exposure of a communicable disease to other employees and/or the general public;

        (4)   To participate in activities related to the adoption of a child; and

        (5)   For medical related family care and bereavement purposes.

    (b)   Limited amounts of sick leave may be used to provide general medical care for a family member and bereavement purposes and to provide care for a family member with a serious health condition.  The maximum amount of sick leave that may be used in a leave year to provide care (general medical care or serious health condition) for family members, adoption purposes, and bereavement purposes is 480 hours subject to the limitations defined in subsections 4, 5, and 6 below.

    (c)   Employees must use the OPM form 71, Request for Leave or Approved Absence, to request sick leave.

    (d)   Management officials are responsible for informing employees in writing of the correct sick leave requesting procedures for the organizational unit.  HCM 630-5, *Local Attendance and Leave Guidelines*, provides TSA policy and procedures for establishing local guidelines for attendance and the use of leave.

    (e)   Supervisors or other designated management officials are responsible for approving and disapproving sick leave requests, in writing, for their employees. Employees should be given a copy of the approved/disapproved leave requests.

    (f)   Designated management officials may place an employee in an AWOL status if the employee is required to substantiate an absence with administratively acceptable documentation and fails to do so.

        **NOTE:**  Supervisors should document any instances where an employee does not show up for work and does not follow established leave requesting procedures.  The failure to follow procedures may be the basis for disciplinary action even if the employee provides acceptable medical documentation for the absence.

(g)   When administratively acceptable documentation is required, it should be submitted no later than 15 calendar days after the date requested by management.  If despite the employee's diligent, good faith efforts he/she is unable to provide the requested documentation, the documentation can be provided within a reasonable period of time.  Generally, the documentation should be submitted no later than 30 calendar days after the date requested.

(h)   Employees are responsible for managing their leave needs and making every effort to avoid requests for unscheduled sick leave.

(i)   Employees are required to make advance requests for sick leave for planned medical, dental, or optical examinations or treatment.

(j)   In the event of an emergency, employees must follow the call-in/notification procedures established by their organization.  At a minimum the employee will provide an estimate of the time that he/she expects to be absent because of the illness.

(k)   Employees separating from Federal service do not receive a lump sum payment for sick leave to their credit.

2.   Earning Rates of Sick Leave and Maximum Accumulation

(a)   Earning of sick leave is not affected by length of service.

(b)   Full-time employees earn 4 hours of sick leave for each full biweekly pay period in a pay status.

(c)   Part-time employees with an established tour of duty earn sick leave at a rate of 1 hour for each 20 non-overtime hours of paid duty status with a maximum of 4 hours of sick leave per pay period.  Part-time carryover hours also apply to the earning of sick leave.  See section C subsection 2(f) of this handbook.

(d)   There is no limit on the amount of sick leave an employee may accumulate and carryover from one leave year to the next.

3.   Administratively Acceptable Documentation and Medical Documentation

(a)   Employees are required to provide "administratively acceptable" evidence to their supervisor when requesting sick leave.  Administratively acceptable documentation may be medical documentation, employee self-certification, or other documentation sufficient to warrant approval of a sick leave request.

(b)   The supervisor or designated management official will determine if the documentation submitted is administratively acceptable.  The type of

administratively acceptable documentation may vary based on the timing, type and length of a request.

(c)  Self-certification and generic health care provider notes with statements such as "under my care" or "received treatment" are sufficient forms of documentation for employees with planned medical, dental or optical treatment.

(d)  For absences of more than 3 days when the employee has been notified that medical documentation is required, generic statements such as "under my care" and "received treatment" generally will not be considered administratively acceptable.

(e)  When medical documentation is required, it should apply only to the current medical condition that incapacitated the employee and at a minimum, provide the following:

(1)  Date the medical condition began;

(2)  Clearly state that the employee is/was incapacitated for duty;

(3)  Provide information on how the condition affects the employee's ability to perform the duties of the position;

(4)  Identify the expected duration of the employee's absence; **and**

(5)  Have the signature of the employee's personal physician or authorized health care provider.

(f)  If the provided medical certification is unclear or does not indicate that the employee is incapacitated for duty, supervisors or designated management officials may request the employee provide additional information or clarification from the health care provider  Medical documentation may also be referred to an agency-authorized physician for review and clarification.

(g)  Supervisors and management officials may not contact the employee's health care provider to obtain medical information.

(h)  Medical documentation of an employee or an employee's family member shall be safe guarded at all times.  See section B subsection 7 of this handbook.

4.  <u>Use of Sick Leave for General Family Medical Care and Bereavement Purposes</u>

(a)  Sick leave for family care includes:

(1)  Providing care for a family member as a result of physical or mental illness, injury, pregnancy or childbirth, medical, dental, or optical examination or treatment; or

(2) Making arrangements necessitated by the death of a family member, attending the funeral of a family member, and/or travel to the locale where services will be held.

(b) Full-time employees are allowed to use up to 104 hours of sick leave each leave year for general medical care of a family member and bereavement purposes.

(c) Part-time employees may use a pro-rated amount of sick leave for general medical family care and bereavement purposes based on the employee's tour of duty.

   **Example**:  A part-time employee who works 20 hours a week may use a maximum of 52 hours of sick leave for general medical family care or bereavement purposes each leave year.

(d) Generally, sick leave for bereavement purposes will be limited to a maximum of 3 workdays.  Management may on a case-by-case basis approve additional use of sick leave for bereavement purposes, but may not exceed the 104 hour leave year limitation of sick leave use for general family medical care and bereavement purposes.

(e) There is not a requirement for employees to maintain a minimum sick leave balance when using sick leave for general medical family care or bereavement purposes.

5. <u>Sick Leave to Care for a Family Member with a Serious Health Condition</u>

(a) Full-time employees may use a maximum of 12 administrative workweeks (480 hours) of sick leave to care for a family member with a serious health condition. This limitation does not apply when sick leave is used to care for a covered service member under the military family leave provisions of FMLA.  See section O, subsection 17 of this handbook.

   **NOTE**:  Sick leave to care for a family member with a serious health condition should not be confused with an employee's entitlement to unpaid leave under the Family and Medical Leave Act (FMLA).

(b) Part-time employees may use a pro-rated amount of sick leave to care for a family member with a serious health condition based on the employee's tour of duty.

   **Example**:  A part-time employee with a regular 40-hour biweekly tour of duty would be able to use up to 240 hours of sick leave in a leave year to care for a family member with a serious health condition.

(c)     There is not a requirement for employees to maintain a minimum sick leave balance when using sick leave to care for a family member with a serious health condition.

(d)     A serious health condition for the use of sick leave to care for a family member with a serious health condition is defined the same as for use of leave under the Family and Medical Leave Act (FMLA).  See section O of this handbook.

6.    Sick Leave for Adoption Purposes

(a)     Employees may use up to 480 hours of sick leave in a leave year for purposes related to the adoption of a child including:

(1)     Appointments with adoption agencies, social workers and attorneys;

(2)     Court proceedings;

(3)     Required travel related to the adoption;

(4)     Periods of time for bonding and care that are required by the overseeing adoption agency or court; and

(5)     Any other activity that is necessary for the adoption process to proceed.

(b)     Employees must provide administratively acceptable evidence for absences related to adoption.  Additionally, employees must provide as much notice as possible when requesting absences related to adoption.  Unscheduled sick leave will rarely be granted for absences related to adoption unless the employee is able to demonstrate that the inability to provide advance notice is beyond his or her control, e.g., employee notified that a child has become available and he or she must immediately pick up the child.

7.    Approval of Sick Leave Requests

(a)     In general, supervisors shall not deny employee use of accrued sick leave unless there is specific knowledge of employee misuse or abuse.

(b)     The availability of sick leave does not constitute an employee entitlement to unscheduled absences on a regular basis.

(c)     Authorized management officials have the discretion to disapprove sick leave requests for non-emergency medical, dental or optical examination or treatment if it is determined that the employee's services are needed to accomplish mission requirements.

(d)    During periods of staffing shortages or organization peak periods, employees may be required to schedule non-emergency and routine medical appointments on days and in timeframes that reduce adverse impact on the organization.

(e)    Management must plan the schedule to permit employees to take leave for non-emergency medical, dental or optical examination or treatment within a reasonable time consistent with the medical care providers' availability.

(f)    If an employee is out of the office on approved extended sick leave and has an insufficient leave balance to cover the absence, the employee will be placed on leave without pay (LWOP) if the supervisor or designated management official is unable to reach the employee or the employee's representative.  The employee is responsible for contacting the supervisor to determine other available leave options and will have the option of substituting appropriate paid leave for any period in which leave without pay was charged in this circumstance.

   **NOTE:**  This is an exception to the general rule that prevents management from placing an employee on LWOP.

(g)    Employees may not be granted sick leave for care and bonding with a healthy newborn.  However, sick leave may be used for bonding when the bonding is court ordered in connection with the adoption of a child.

(h)    Employees may not be granted sick leave to perform outside employment, including self-employment, or to seek employment.

(i)    Employees may not be granted use of sick leave for absences related to military service unless the requirements for use of sick leave are met (e.g. the employee suffers from a physical or mental ailment).

(j)    An employee approved for disability retirement may not continue to use sick leave beyond the end of the pay period in which the Office of Personnel Management (OPM) approves disability retirement for the employee.

8.   <u>Advance Sick Leave</u>

(a)    Sick leave may be advanced to employees who have exhausted all of their available sick leave.  The advancement of sick leave is not an employee entitlement.

(b)    Designated management officials retain the authority to approve advance sick leave requests but may delegate the authority as appropriate for the efficient operation of the organization.

(c)    A full-time employee may be granted up to a maximum of 30 days (240 hours) of advance sick leave for a personal illness, medical appointments, adoption

purposes, or to provide care for a family member.  The total amount of sick leave that may be advanced to a part-time employee is prorated based on his/her tour of duty.

(d)     A full-time employee's advance sick leave balance shall not exceed 240 hours at any time.  This amount is pro-rated for part-time employees.

(e)     Employee requests for advance sick leave must be submitted on the OPM Form 71 and be accompanied by administratively acceptable medical documentation.

(f)     The supervisor or designated management official may not advance sick leave without the employee making a request for advance leave.

(g)     When warranted, sick leave may be advanced whether or not the employee has an annual leave or compensatory time off balance.  However, the supervisor or designated management official must consider whether the employee will continue employment with TSA long enough to repay the indebtedness.

(h)     Employees may not be advanced sick leave during a period of active military duty.

(i)     Employees cannot be advanced sick leave for care of a covered service member if the employee has not invoked FMLA to care for a covered service member under the provisions of section O of this handbook.

(j)     An employee may repay advanced sick leave by one of the following:

   (1)     A charge against annual leave provided this action is not for the purpose of avoiding a forfeiture of annual leave at the end of the leave year;

   (2)     Substituting donated leave, received under the Voluntary Leave Transfer Program, for the advance sick leave;

   (3)     Accrual of sick leave; or

   (4)     A monetary settlement upon separation from Federal Service.

(k)     Indebtedness related to advance sick leave is waived for employees approved for disability retirement and for deceased employees.

9.  Documentation for Absences of 3 Workdays or Less

   (a)  Supervisors and other designated management officials have the authority to request administratively acceptable documentation for sick leave absences of three workdays or less.

   (b)  Generally, employee self-certification will be sufficient for absences of three workdays or less.

   (c)  An employee whose leave record indicates possible abuse of sick leave may be required to submit a medical certificate, or other acceptable documentation, in support of any future request for sick leave, regardless of length.

   (d)  ***If administratively acceptable documentation is required for absences of three workdays or less, employees should, under normal circumstances, be notified in advance of the requirement.***

10.  Documentation for Absences of More Than 3 Workdays

   (a)  For an absence of more than three workdays, supervisors or other designated management officials may require an employee to submit a health care provider's certification of the medical reason for the leave or other satisfactory evidence as to the reason for the absence.

   (b)  A reasonable statement from the employee and self-certification for the absence may be considered acceptable documentation for an absence of more than three workdays.

   (c)  Employees on sick leave for 30 calendar days or more are required to submit detailed medical documentation from the health care provider to substantiate the absence.  The employee may be required to subsequently submit documentation every 30 calendar days that identifies the employee's progress and expected return to work date.

   (d)  Employees on extended sick leave may be required to provide documentation certifying that they may return to duty if exposure to their medical condition could pose a health threat to co-workers or the general public.  If required, employees will be notified in advance of their return that such documentation is required.

   (e)  An employee occupying a position with established physical requirements whose medical condition prevented him/her from performing the essential functions of the position may be required to provide written medical certification from the health care provider of the employee that he/she is able to perform the essential functions of his/her position.  When documentation is required, documentation must be required from all similarly situated employees (i.e., same occupation, same serious health condition, same physical restrictions,

within the same management chain) and employees will be notified in advance of their return that such documentation is required.

11. <u>Excessive Use of Unscheduled Sick Leave</u>

    (a)    Supervisors or other authorized management officials are responsible for monitoring unscheduled use of sick leave.  Excessive use of unscheduled leave should be addressed immediately.

    (b)    Excessive use of unscheduled sick leave could serve as the basis for requiring an employee to substantiate all absences with administratively acceptable documentation.

    (c)    An employee suspected of abusing sick leave privileges through the use of excessive unscheduled sick leave may be placed on leave restriction.

12. <u>Substitution of Sick Leave for Annual Leave</u>

    (a)    If an employee becomes ill within a period of annual leave, the employee may be granted sick leave for the period of illness.

    (b)    If an employee's family member becomes ill during a period the employee is on annual leave, the employee may be granted sick leave for the period of illness.

           ***Example***:  While on a family vacation, the employee's child becomes ill requiring hospitalization.  The employee may be granted sick leave to provide care to the child.

    (c)    An employee's must request the change to sick leave as soon as possible, generally within one pay period, and must provide administratively acceptable documentation to substantiate the illness.

13. <u>Re-credit of Sick Leave</u>

    (a)    Employees who transfer to TSA from other Federal agencies will have all sick leave credited to their sick leave account at TSA.  If transferring from a different leave system, 7 calendar days of sick leave are deemed equal to 5 workdays of sick leave.

    (b)    If an employee previously left Federal Service and is now returning to join TSA, the employee's sick leave may be re-credited regardless of the length of the break in Federal service.

    (c)    Employees who separated from the Federal Government and returned before December 2, 1994, are not eligible to have their sick leave re-credited.  If the employee returned on or after December 2, 1994, all sick leave may be re-credited.

(d)   Employees who have had their sick leave used in the computation of an annuity may not have that sick leave re-credited upon joining TSA.

(e)   Employees separating from Federal service do not receive a lump sum payment for sick leave to their credit.